**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GERALD AND LAURA WEATHERLY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-4371-EEF-SS** |
| **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** | |

**ORDER**

PLAINTIFFS' MOTION TO COMPEL (Rec. doc. 160)

**DENIED**

Before the undersigned is the motion of the plaintiffs, Gerald and Susan Weatherly, to compel discovery.

BACKGROUND

At the time of Hurricane Katrina, the plaintiffs owned a residence in Empire, Louisiana. The plaintiffs report that after the passage of the storm nothing remained but a slab. State Farm had issued the plaintiffs a homeowner's policy and a flood policy. On August 24, 2007, the plaintiffs filed a complaint against State Farm on the homeowner's policy.

Laurie Beno was employed by Eberl's Claim Service, Inc. which provided claims service to State Farm and other insurance companies following catastrophes. Beno was assigned to adjust Hurricane Katrina flood claims for State Farm at its Dallas call center for thirty days. On or about October 1, 2005, Beno spoke to the plaintiffs and adjusted their flood claim. Rec. doc. 165 at 2-3.

There is no evidence that Beno had any communications with counsel for State Farm while

she worked in the Dallas call center.  When the plaintiffs sought her deposition in this case, State

Farm's counsel communicated with her by e-mail.  When Beno stopped responding to State Farm's

counsel, the plaintiffs located her.   Their investigator and counsel communicated with her

concerning her work at the call center.  After she was subpoenaed for a deposition in Michigan, she

contacted State Farm's counsel who met with her in New Orleans in preparation for her deposition.


At the deposition State Farm's counsel objected to questions regarding written and oral

communications between counsel for State Farm and Beno.  The undersigned ruled that the

communications were subject to the attorney-client privilege because Beno's actions were imputed

to State Farm.  The plaintiffs objected to the ruling.  The parties were instructed to complete the

deposition and brief the issue.  Beno was told she may have to return to New Orleans for a further

deposition.

The plaintiffs seek an order requiring Beno to produce e-mails exchanged with State Farm's

counsel and re-appear for a second discovery deposition limited to questions concerning her written

and oral communications with State Farm's counsel.

ARGUMENTS OF THE PARTIES

The plaintiffs contend that there is no attorney-client privilege or, in the alternative, it was

waived because: (1) State Farm represented that Beno was an independent adjuster over whom it

had no control; (2) State Farm authorized plaintiffs to contact Beno; (3) Beno voluntarily spoke to

plaintiffs' counsel on several occasions; and (4) State Farm paid Beno $3,000 exclusive of travel and

lodging costs for her time in preparation for and at the deposition.  They urge that the privilege is

2

to be strictly confined to its narrowest limits.  State v. Green, 493 So.2d 1178, 1181 (La. 1986).[1]

State Farm urges that: (a) an attorney-client relationship exists where the putative client has a reasonable subjective belief that an agreement of representation existed; and (b) there was no waiver because Beno did not disclose any privileged attorney-client communications during her conversations with counsel for plaintiffs.

ANALYSIS

State Farm contends that Beno's deposition testimony demonstrates the presence of an attorney-client relationship.  Beno testified that State Farm's counsel represented her during the case, but they were not retained by her to represent her on any other matter.  Rec. doc. 165 at 5. State Farm contends that Beno reasonably believed that State Farm's counsel would represent her regarding all aspects of plaintiffs' claim.

In Louisiana State Bar Association v. Bosworth, 481 So.2d 567 (La. 1986), it was determined that the lawyer violated the provisions of the Code of Professional Responsibility.  The lawyer represented a widow in a wrongful death action which was settled.  When the widow went to the lawyer's office for disbursement of the settlement funds, the lawyer asked for a loan from her share of the proceeds.  The widow made the loan, but the lawyer did not repay it and declared bankruptcy. The lawyer urged that at the time of the loan, he was not the lawyer for the complainant.  The Supreme Court rejected this contention stating that:  "[t]he existence of an attorney-client relationship turns largely on the client's subjective belief that it exists."  Id. at 571.  The Supreme Court found it significant that when the widow was asked why she agreed to the loan, she replied that, "[i]f you can't trust your attorney, who can you trust."  Id. at 572.  The Supreme Court

---

[1] The parties agree Louisiana substantive law controls the issue of attorney-client privilege in this diversity case.  Fed. R. Evid. Art. 501.

concluded that she was justified in believing that the attorney represented her.

In Hendrick v. ABC Insurance Co., 760 So.2d 650 (La. App. 1st Cir. 2000), the court was presented with a legal malpractice claim in which the defendant law firm argued it did not represent Hendrick. He contended that the law firm which was hired by bankruptcy counsel as special counsel, also represented him in connection with a suit filed regarding a stock sale by the estate. The court, citing Bosworth, concluded that Hendrick had a reasonable basis for his belief that the law firm represented him. Id. at 655. Among the evidence cited by the court were memoranda and correspondence sent to Hendrick by the law firm which it identified as attorney/client confidential communications and the fact that Hendrick was a named plaintiff in the suit filed by the law firm. It determined that, "[t]he absence of a signed employment agreement, alone, is insufficient to defeat a claim that the relationship exists." Id. at 662.[2]

The plaintiffs urge that the privilege may not be established by conclusory statements. They cite Cacamo v. Liberty Mutual Fire Insurance Company, 798 So.2d 1210 (La. App. 4th Cir. 2001), writ denied 807 So.2d 844 (La. 2002), in which the court concluded that the privilege did not apply to documents identified on a privilege log because the producing party did not present any evidence for the attorney-client privilege other than the privilege log. 798 So.2d 1216. In Cacamo, the court held:

> To establish attorney-client privilege, several elements must be proven: (1) the holder of the privilege is or sought to become a client; (2) the communication was made to an attorney or his subordinate in a professional capacity; (3) the

---

[2] "It is not necessary that an attorney be formally retained for communications to be privilege. Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, A.B.A., Sec. of Lit. (5th Ed. 2007) ("Epstein"), p. 198. In re Leblanc, 884 So.2d 555 (La. 2004), cited Bosworth and found that the attorney-client relationship existed because: (1) the complainant believed that the attorney represented her; (2) the attorney's actions over the five-year period at issue fostered the belief that he was taking action on her behalf; and (3) at no time did the attorney advise that he was not representing her. Id. at 557.

communication was made outside the presence of strangers; (4) the communication was made to obtain a legal opinion or services; and (5) the privilege has not been waived.

Id. at 1216 (citing In re Shell Oil Refining, 812 F.Supp. 658, 661 (E.D.La. 1993) (Mentz, J.)). State Farm contends that Beno's testimony demonstrates that she was the client of counsel for State Farm. The argument at Beno's deposition demonstrates that: (a) the witness preparation communications were made to State Farm's counsel in their professional capacity; (b) they were made outside the presence of strangers; and (c) they were made to obtain legal services in this proceeding. Beno, as the holder of the privilege, has not relied on a mere conclusory statement.

Article 506 of the Louisiana Code of Evidence provides for a lawyer-client privilege and defines a representative of the client as,

> (a) A person having authority to obtain professional legal services, or to act on advice so obtained, on behalf of the client.
>
> (b) Any other person who makes or receives a confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client.

La. Code Evid. Art. 506(A)(2). The 1992 Comments include the following:

> The cases, even those involving corporate parties, do not appear to discuss which persons are sufficiently identified with "the client" so as to include them within the privilege. Federal Standard of Evidence 503 did not include any reference to "representatives of the client", thereby leaving the matters to the courts. Both the Uniform Rules of Evidence and the American Bar Association proposal have not only specifically included a definition of "representative of client" but have made it somewhat broad to accommodate the decision of the Supreme Court in Upjohn v. United States, 449 U.S. 383 (1981), which, in effect, also leaves the matter to the courts.

1992 Comment(f) to La. Code Evid. Art. 506. Agents, independent contractors, and others who may be functionally equivalent to current employees should be treated as representatives of the client for the purpose of Article 506. See Dubois v. Gradco System, Inc., 136 F.R.D. 341 (D. Conn. 1991).

5

This is consistent with the undersigned's statement at the deposition that Beno's actions can be imputed to State Farm.

Based on the Louisiana rule that a client's subjective belief largely determines the existence of an attorney-client relationship, Beno's unequivocal testimony that State Farm's counsel represented her in this case, and the fact that her actions in adjusting claims are imputed to State Farm, the undersigned concludes that the existence of the attorney-client relationship is established.

The plaintiffs argue that if there was such a relationship it was waived. The plaintiffs cite the conduct by Beno and State Farm after she completed her work at the Dallas call center and before plaintiffs subpoenaed her for a deposition in Michigan. When Beno's services at the call center were concluded she ceased to be State Farm's representative.[3] She returned to State Farm's employment temporarily in 2008. When the District Judge authorized plaintiffs to contact her, State Farm was not in communication with her. Rec. docs. 81 and 82. It reports that Beno stopped responding to e-mails in May or June, 2008. Rec. doc. 165 at 3. After the plaintiffs' investigator located her, she talked to the investigator and counsel for plaintiffs. During one of these communications, Beno reported that she consulted with an attorney in Michigan who advised her not to appear voluntarily in New Orleans. She also reported that she would not cooperate in the service of a subpoena. Rec. doc. 160. After she was served with a subpoena, she contacted State Farm's counsel and agreed to appear in New Orleans. Rec. doc. 165 at 4.

The facts demonstrated that Beno formed the relationship for purposes of the deposition and

_____

[3] There is authority that because of the absence of an agency relationship, the privilege does not extend to a former employee's communications with corporate counsel after the termination of the employment. City of New York v. Coastal Oil New York, Inc., et al, 2000 WL 145748 (S.D.N.Y.), and Epstein at 168-69. In Coastal Oil, the deponent stated that he did not regard the lawyers, who were employed as house counsel for the defendant corporation, as his lawyers. Beno. however, testified that she regarded State Farm's counsel as her lawyers for this proceeding.

the proceedings in New Orleans.  After that, there was no conduct by Beno that demonstrates a purposeful or voluntary disclosure of the communications with State Farm's counsel.  Epstein at 398.  To the contrary, questions concerning those communications were met with objections, instructions not to answer, and the call for the undersigned's assistance in resolving the dispute.  Accordingly,

IT IS ORDERED that plaintiffs' motion to compel (Rec. doc. 160) is DENIED.

New Orleans, Louisiana, this 13th day of July, 2009.

**SALLY SHUSHAN**
**United States Magistrate Judge**